**FILED**

OCT 2 7 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARIA ALVARADO DE MUNOZ,        )    CIV-F-02-6286 OWW SMS
                                )
                Plaintiff,      )    MEMORANDUM AND ORDER RE:
                                )    DEFENDANTS' MOTION FOR
        v.                      )    PARTIAL SUMMARY JUDGMENT
                                )
COUNTY OF FRESNO, and DOES 1-50,)
inclusive,                      )
                                )
                Defendants.     )
                                )
_____ )

## I.  INTRODUCTION

This action arises out of Plaintiff's arrest pursuant to an eleven year old arrest warrant issued for another person, who had used Plaintiff's name as an alias.  Plaintiff's complaint alleges both federal and state claims.  Defendant moves for partial summary judgment on Plaintiff's state claims.

## II.  BACKGROUND

### A.  Procedural History

On October 21, 2002, Plaintiff Maria Alvarado de Munoz filed her Complaint, docket No. 1, naming the County of Fresno and Does 1 through 50, inclusive, as Defendants, and stating a claim under

1



1  42 U.S.C. § 1983.  Upon motion by Defendants, docket No. 4, the
2  action was dismissed with leave to amend by Order, docket no. 6.
3  Plaintiff filed a First Amended Complaint, docket no. 7, on
4  December 24, 2002.  Defendants filed an Answer, docket no. 8, on
5  January 2, 2003.

6  The First Amended Complaint states the following claims: (1)
7  violation of the United States Constitution, Amendments IV and
8  XIV, under 42 U.S.C. § 1983 for unlawful seizure; (2)
9  supplemental claim for assault and battery; (3) false arrest and
10 imprisonment; (4) negligence; (5) negligent infliction of
11 emotional distress; and (6) violation of the California
12 Constitution, Article 1, §§ 7(a) and 13.  Docket no. 7, at 5:1-
13 7:8.  Defendant contests all six claims.  Answer, docket no. 8,
14 at 3:8-4:12.  Defendant asserts eleven separate affirmative
15 defenses.  *Id.* at 4:13-6:2.

16 On August 15, 2003, Defendants moved for summary
17 adjudication of all Plaintiff's state law claims.  Docket no. 45.
18 Plaintiff filed her Opposition, docket no. 58, on August 29,
19 2003.  Defendants filed a Reply, docket no. 60, on September 8,
20 2003.

21 B.   Defendant's Undisputed Material Facts and Supporting
22      Evidence[1]

23

24      [1]   Under Local Rule 56-260(b), "[a]ny party opposing a
25 motion for summary judgment or summary adjudication shall
26 reproduce the itemized facts in the Statement of Undisputed Facts
   and admit those facts which are undisputed and deny those which
27 are disputed. . . ."  As Plaintiff has responded only to the last
   of Defendant County of Fresno's undisputed facts as 56-260(b)
28 requires, all but that single fact will be deemed admitted.

2

<u>Undisputed Material Fact</u>

A.    Initial Investigation and Arrest.

1.   In July 2002, Deputy Erich Garringer was assigned by the County of Fresno Sheriff's Department to the United States Marshal's Office, Central Valley Joint Fugitive Task Force.
<u>Supporting Evidence</u>
Garringer Declaration, Paragraph 2.

2.   Deputy Garringer's duties in that capacity included locating and apprehending fugitives wanted by the FBI which provided him with files on wanted fugitives who were receiving financial aid from the federal government.
<u>Supporting Evidence</u>
Garringer Declaration, Paragraph 2

3.   Deputy Garringer was provided an FBI file for Maria Herrera during his assignment to the United States Marshal's Office and understood from reviewing the file that it was based upon an October 17, 1991, no bail arrest warrant for the arrest of Maria Herrera which had been issued by the Fresno County Superior Court for a violation of Health and Safety Code section 11351 and for a violation of probation.

<u>Supporting Evidence</u>
Garringer Declaration, Paragraph 3

4.   On August 28, 2002, Deputy Garringer began his investigation into the Maria Herrera file.  The warrant abstract which was included in the FBI file for Maria Herrera indicated that she used an alias of Maria Munoz.
<u>Supporting Evidence</u>
Garringer Declaration, Paragraph 4

5.   Deputy Garringer also conducted a computer search on Maria Herrera in the Fresno County Sheriff's Department Records Management System (RMS) and noted the address of 1940 Tri Circle, Firebaugh, California and noted the same alias of Maria Munoz.
<u>Supporting Evidence</u>
Garringer Declaration, Paragraph 5

6.   Deputy Garringer also obtained a copy of Maria Herrera's driver's license photograph.
<u>Supporting Evidence</u>
Garringer Declaration, Paragraph 6

7.   Deputy Garringer also ran an "Info Tech" search under the name Maria Herrera which showed a

Maria J. Munoz with a date of birth of June 1944, and a
Maria Munoz with a date of birth of 1944, with a social
security number which was plaintiff Maria Munoz's true
social security number and a third alias of Maria
Franco with the same social security number.  Info Tech
is a system which searches credit reports, bankruptcy
records, property deeds, death certificates and civil
and criminal files by either name or social security
number.  Multiple entries with addresses of 1940 Tri
Circle Drive, Firebaugh; 1940 Drive, Firebaugh; and
1940 Tri Circle, Selma were also revealed.  The most
recent address shown by this search was the 1940 Tri
Circle, Firebaugh, California address.
     <u>Supporting Evidence</u>
     Garringer Declaration, Paragraph 7

     8.  Deputy Garringer concluded that Maria Herrera
was a fugitive with multiple identities, multiple dates
of birth and multiple social security numbers who was
making minor variations to her address to avoid
apprehension.  He believed the most recent address
entry of 1940 Tri Circle, Firebaugh, California, to be
accurate.
     <u>Supporting Evidence</u>
     Garringer Declaration, Paragraph 8

     9.  Deputy Garringer noted that there was a
discrepancy in the physical description of Maria
Herrera's height and weight in the documents he
reviewed, but understood that in a ten year period, a
person's weight can change.  He believed that the
height discrepancy noted in the documents was due to a
typographical error.
     <u>Supporting Evidence</u>
     Garringer Declaration, Paragraph 9

     10.  On September 20, 2002, Deputy Garringer
provided Deputy Haslam with several warrant packages,
including Maria Herrera's file.  Deputy Garringer asked
Deputy Haslam to distribute the packages to the day
shift deputies and to request that they attempt to
locate and arrest the wanted fugitives identified in
the files.
     <u>Supporting Evidence</u>
     Garringer Declaration, Paragraph 10

     11.  The morning of September 20, 2002, Deputy
Haslam and Deputy David Cunha went to 1940 Tri Circle,
Firebaugh, the address on the warrant, in an attempt to
serve the arrest warrant for Maria Herrera.
     <u>Supporting Evidence</u>
     Deposition of Deputy Haslam pages 29:10-17; 30:8-
23; Deposition of Deputy Cunha pages 5:5-7:2; 7:14-
8:14; and 9:7-11.

12.   Deputy Haslam was told by Deputy Garringer that there were numerous aliases for Maria Herrera, as well as different driver's license numbers and social security numbers.
<u>Supporting Evidence</u>
Deposition of Deputy Haslam pages 20:15-21:20

13.   On the morning of her arrest, plaintiff showed Deputy Haslam her social security card and the number on the plaintiff's card matched the one on the warrant.  This indicated to him that she was the same person that was wanted in the warrant packet.
<u>Supporting evidence</u>
Deposition of Deputy Haslam pages 28:14-29:8

14.   Deputy Haslam had looked at the picture with the warrant packet before he went to the Firebaugh address and then again while he was at the door of the plaintiff's house.  He compared the picture to Maria Munoz and believed it was the same person.  Plaintiff's name, Maria Munoz, was also one of the names in the warrant.
<u>Supporting Evidence</u>
Deposition of Deputy Haslam pages 30:10-23; 34:5-11

15.   Deputy Haslam noted that plaintiff Munoz had on glasses and that in the picture she did not. However, that did not cause him to believe that he should investigate her identity further, as he had no information from the DMV regarding the suspect's need for corrective lenses.
<u>Supporting Evidence</u>
Deposition of Deputy Haslam, pages 34:12-35:4

16.   While Deputy Haslam did notice that plaintiff was a different height than that shown on the warrant, based upon prior experience, he assumed it was a typographical error.
<u>Supporting Evidence</u>
Deposition of Deputy Haslam pages 35:13-36:7

17.   Deputy Haslam also noticed that her weight was different, but understood that weight changes over time.
<u>Supporting Evidence</u>
Deposition of Deputy Haslam page 36:8-24

18.   Deputy Haslam noted that plaintiff's driver's license number was also on the warrant and that the date of birth matched that on the warrant package.
<u>Supporting Evidence</u>
Deposition of Deputy Haslam pages 37:2-38:16; 43:9-23

19.  When Deputy Haslam saw that the driver's license numbers matched, he assumed it was the same person as on the warrant.
Supporting Evidence
Deposition of Deputy Haslam pages 39:15-40:39; 43:9-23

20.  Deputy Cunha had looked at the picture of Maria Herrera before he and Deputy Haslam arrived at Plaintiff's home.  He believed plaintiff was the person they were looking for.
Supporting Evidence
Deposition of Deputy Cunha pages 7:17-8:14; 18:3-25

21.  Prior to arresting the plaintiff, Deputy Cunha called the AT&T translator who told him that the plaintiff said that she had never been in trouble before, did not have a warrant, and that she wasn't Maria Herrera.
Supporting Evidence
Deposition of Deputy Cunha pages 10:25-12:13

22.  Deputy Cunha called Deputy Garringer to verify that the plaintiff was the right person before he and Deputy Haslam arrested her.  All the information that they had indicated to Deputy Cunha that plaintiff was the person they were looking for.
Supporting Evidence
Deposition of Deputy Cunha pages 17:24-18:25

23.  During that telephone conversation, Deputy Garringer told Deputy Cunha to ask Munoz if she was receiving social security at the Tri Circle address and Deputy Cunha determined that she was.  They also discussed the fact that plaintiff matched the picture that the deputies had and the discrepancies in the physical description of Herrera and Munoz.
Supporting Evidence
Garringer Declaration Paragraph 11

24.  Deputy Haslam and Deputy Cunha remained at plaintiff's house for ten to twenty minutes.
Supporting Evidence
Deposition of Deputy Haslam pages 46:24-47:14

25.  After Deputy Cunha completed his phone conversation with the translator and spoke with Deputy Garringer, they put handcuffs on the plaintiff and left the house with her.  She was handcuffed because she was under arrest for the no bail arrest warrant.
Supporting Evidence
Deposition of Deputy Haslam pages 46:24-47:14

26.  Deputies Haslam and Cunha indicated that the

6

tone of plaintiff's voice indicated that she was upset, but she did not resist.
Supporting Evidence
Deposition of Deputy Haslam pages 47:22-48:18

27. Based upon the documents which Deputies Garringer, Haslam and Cunha reviewed concerning Maria Herrera's FBI file, they believed that plaintiff Maria Munoz was the person identified in the warrant.
Supporting Evidence
Garringer Declaration, Paragraph 12; Deposition of Deputy Haslam, page 57:16-21; Deposition of Deputy Cunha, pages 17:24-18:25.

28. Plaintiff was initially taken to the Firebaugh Courthouse where there is a holding cell.
Supporting Evidence
Deposition of Deputy Haslam pages 47:15-21; 48:19-49:7.

29. Deputy Chacon communicated with plaintiff in Spanish at the Firebaugh Courthouse and advised Deputy Haslam that she had some type of medical condition concerning her heart and that she could not be held at the Courthouse because of this.
Supporting Evidence
Deposition of Deputy Haslam pages 49:8-23

30. Once Deputy Haslam was made aware of the fact that the plaintiff had a medical condition, he transported her to the Fresno County Jail.
Supporting Evidence
Deposition of Deputy Haslam pages 50:2-6

31. He took her inside, retrieved his arrest report off of the computer and plaintiff waited for her turn to be seen by the jail screening nurse.
Supporting Evidence
Deposition of Deputy Haslam, pages 50:7-13: 54:6-21.

32. Deputy Haslam did not inform the people at the county facility that plaintiff was claiming not to be Maria Herrera, as he believed that he had arrested the person in the warrant.
Supporting Evidence
Deposition of Deputy Haslam, page 57:1-21

33. He had not taken her prescription medications with her at the time she was arrested knowing that she would go through a medical screening process at the County Jail and that any necessary medications would be provided to her.

Supporting Evidence
Deposition of Deputy Haslam, pages 66:20-67:17.

A.   Booking Process.

a.   Medical Screening

34.   Plaintiff's medical screening was the first step of plaintiff's booking process and was conducted by Registered Nurse Odilla Dionisio on September 20, 2002, at 11:07 a.m.
Supporting Evidence
Deposition of Dionisio of 2/25/03, pages 5:24-7:1; and 5/6/03 pages 19:23-20:2.

35.   Nurse Dionisio used an interpreter to obtain information from the plaintiff by use of a two way xylophone service.
Supporting Evidence
Deposition of Dionisio of 5/6/03 pages 9:6-11:9; 19:4-19.

36.   She interacted with the plaintiff for five to ten minutes and recalled that plaintiff had a heart problem or hypertension.   Plaintiff did not tell Nurse Dionisio that she was not Maria Herrera.
Supporting Evidence
Deposition of Dionisio of 2/25/03 pages 18:6-21:15.

37.   The medical condition screening form prepared by Nurse Dionisio indicated that plaintiff was on medication, was allergic to penicillin, had high blood pressure, heart problems, including heart surgery, and had diabetes mellitus.
Supporting Evidence
Deposition of Dionisio of 2/25/03 pages 21:16-23:10; deposition transcript of 5/6/03 page 7:3-9:5; 19:4-20:2.

38.   Nurse Dionisio also checked plaintiff's blood sugar.
Supporting Evidence
Deposition of Dioniso of 2/25/03 pages 35:12-35:22.

39.   Nurse Dionisio asked plaintiff about current medications and included the name of plaintiff's doctor on the Jail Medical Form which she prepared.
Supporting Evidence
Deposition of Dionisio of 5/6/03 pages 11:10-13:13.

40.   She obtained the name of plaintiff's pharmacy and had plaintiff sign a release of medical information

8

for verification of the plaintiff's prescribed medications to be faxed to the pharmacy.
        Supporting Evidence
        Deposition of Dionisio of 5/6/03 pages 13:14-15:11.

41.   Nurse Dionisio also referred plaintiff to a clinician and obtained orders from the clinician, Dr. Tiu.  The orders included medications for plaintiff.
        Supporting Evidence
        Deposition of Dionisio of 5/6/03 pages 22:4-24.

42.   Plaintiff did not appear to Nurse Dionisio to be in distress and acted normally in responding to her questions.
        Supporting Evidence
        Deposition of Dionisio of 5/6/03 pages 15:12-16:1.

43.   After examining the plaintiff, Nurse Dionisio gave plaintiff's paperwork to the booking officer.
        Supporting Evidence
        Deposition of Dionisio of 2/25/03 pages 31:21-32:7.

        b.   Booking

44.   Correctional Officer Andy Schick booked the plaintiff.  The plaintiff appeared to C.O. Schick to be calm and she responded to the name Maria Herrera when he called her from the holding cell.
        Supporting Evidence
        Deposition of Schick pages 22:13-19.

        c.   Prints and Photographs

45.   Plaintiff was fingerprinted and photographed by ID Tech James Whitton at about 4:00 p.m.
        Supporting Evidence
        Deposition of Whitton pages 16:7-18:4

46.   He found plaintiff to be agreeable, quiet and very passive.  He did not recall being told by anyone that she claimed she was not the right person.
        Supporting Evidence
        Deposition of Whitton pages 16:7-18:20.

47.   Plaintiff also came out of the holding cell when ID Tech Whitton called out for Maria Herrera.
        Supporting Evidence
        Deposition of Whitton pages 18:5-20.

        e.   Classification Officer Interview

48.   Because Munoz was booked on a no bail warrant it was anticipated that she would be housed in the

9

jail.  Housing assignments are made by classification
officers based upon an interview with the inmate and a
criminal history check.
     Supporting Evidence
     Deposition of Murphy pages 20:19-25; 17:19-18:24;
Deposition of Veloz page 5:7-19.

     49.  The classification interview with Munoz was
conducted by C.O. Tony Veloz.
     Supporting Evidence
     Deposition of Veloz pages 5:20-23; 7:25-8:9.

     50.  Plaintiff was classified by C.O. Veloz as
minimum security.
     Supporting Evidence
     Deposition of Veloz pages 7:25-10:18.

     f.  Strip Search

     51.  Correctional Officer Murphy did not recall
the plaintiff claiming to be the wrong person.  She did
not know on the day of the incident about a mistaken
identity.
     Supporting Evidence
     Deposition of Murphy pages 14:1-8; 23:7-20.

     52.  Plaintiff Munoz was strip searched by C.O.
Murphy at approximately 8:12 p.m.
     Supporting Evidence
     Deposition of Murphy pages 19:2-20:18.

     53.  The strip search included a visual body
cavity search of the plaintiff by C.O. Murphy to
confirm that plaintiff had no contraband.
     Supporting Evidence
     Deposition of Murphy page 22:4-10.

     54.  The search was visual only and did not
involve physical contact.
     Supporting Evidence
     Deposition of Murphy page 22:4-10.

     55.  The process took approximately five minutes.
     Supporting evidence
     Deposition of Murphy page 22:25-23:3.

     56.  C.O. Murphy described plaintiff's demeanor as
modest, but did not note anything else about her
demeanor.
     Supporting Evidence
     Deposition of Murphy page 22:17-24

     g.  Release

     57.  Because Munoz met certain qualifications, she

was eligible for early release pursuant to a federal court order prohibiting overcrowding of the jail.  The determination to release Munoz was made at approximately 8:14 p.m.  The early release was approved by Lieutenant Kevin Peters.
Supporting Evidence
Deposition of Akioyame pages 8:19-10:8; 11:8-5; 13:11-14:14.

58.  Munoz was released from the pre-release call at 11:03 p.m. through C.O. IV Blankston Akioyame and was cited to appear in court on September 27, 2002.  The release package was prepared by officers in the front lobby.  There were a number of other inmates being released during this period.
Supporting Evidence
Deposition of Akioyame pages 10:9-11:7; 12:18-13:21; Deposition of Lalaine Tiu, M.D., page 54:6-7.

h.  Additional

59.  The notation on Exhibit F to Sylvia Sokol's declaration, "Expire: 123199" does not mean that the warrant referenced in this printout expired on that date.  The reason the date "123199" was entered on the screen was that the Records Management System had not been remediated to accept dates into the next century because of the "Y2K" problem on that date.
Supporting Evidence
Declaration of Les van Meter, paragraph 3.

C.  Plaintiff's Undisputed Material Facts and Supporting Evidence with Defendant's Responses[2]

Plaintiff's No. 1.  The Honorable Brant Bramer noted when he cleared Mrs. Alvarado de Munoz of all charges, "[s]he should not have been arrested and should not, of course, be arrested again.  The names are not even similar."

Supporting Evidence: October 18, 2002, Hearing in Superior Court of the State of California In and For the County of Fresno (Sokol Decl. Ex. A).

_____

[2]  Defendants' objections are set forth at length in docket no. 61.

Defendant's Response to No. 1.  Undisputed to the extent
that the statement was made.  However, Defendant objects on the
basis of relevance, as an observation made by a judge after the
fact I snot relevant as to whether the arresting officers had a
reasonable belief at the time of the arrest that Plaintiff was
the suspect named in the warrant.  The fact that a mistaken
arrest was made is not in dispute.  Therefore, this post hoc
opinion does not tend to prove that the actions of the deputy
sheriffs were unreasonable.  The objection is sustained on the
ground of relevance for the purpose of this motion and improper
legal opinion.

Plaintiff's No. 2.  Maria Alvarado de Munoz suffers from
diabetes and hypertension and has undergone two open heart
surgeries.

Supporting Evidence: Munoz Dep. at 11:5-11 (Sokol Decl. Ex.
B).

Defendant's Response to No. 2.  Undisputed, as Defendant has
no evidence to the contrary.  Defendant objects on the basis of
relevance, as there is nothing to indicate that Defendant should
have been aware of Plaintiff's pre-existing conditions prior to
the arrest.  Such testimony could only be relevant to Plaintiff's
claim for inadequate medical care and damages, neither of which
are at issue in this motion.  Overruled in light of amendment of
complaint.

Plaintiff's No. 3.  Mrs. Munoz takes six types of
medications throughout the day.

Supporting Evidence: Munoz Dep. at 12:22-13:8.

Defendant's Response to No. 3.  Undisputed, as Defendant has

12

1   no evidence to dispute this testimony.  Defendant objects on the

2   basis of relevance, as there is nothing to indicate that

3   Defendant should have been aware of Plaintiff's pre-existing

4   conditions prior to the arrest.  Such testimony could only be

5   relevant to Plaintiff's claim for inadequate medical care and

6   damages, neither of which is at issue in this motion.  OVERRULED.

7          Plaintiff's No. 4.  On September 20, 2002, at approximately

8   9:00 a.m. two law enforcement officers from the Fresno County

9   Sheriff's Department arrived at Mrs. Munoz's home.

10         Supporting Evidence: Cunha Dep., Ex. 11 (Sokol Decl. Ex. C).

11         Defendant's Response to No. 4.  Undisputed (see Defendant's

12  UMF no. 11).

13         Plaintiff's No. 5.  Mrs. Munoz had not taken her morning

14  dose of medication on September 20, 2002.

15         Supporting Evidence: Munoz Dep. at 14:23-25 (Sokol Decl. Ex.

16  B).

17         Defendant's Response to No. 5.  Undisputed, as Defendant has

18  no evidence to dispute this testimony.  Defendant objects on the

19  basis of relevance, as there is nothing to indicate that

20  Defendant should have been aware of Plaintiff's pre-existing

21  conditions prior to the arrest.  Such testimony could only be

22  relevant to Plaintiff's claim for inadequate medical care and

23  damages, neither of which are at issue in this motion.  Objection

24  OVERRULED in light of amendment to complaint.

25         Plaintiff's No. 6.  Mrs. Munoz has never been in trouble

26  with the police and has no criminal record.

27         Supporting Evidence: Munoz Dep. at 7:3-4 (Sokol Decl. Ex.

28  B); Whitton Dep. at 37:11-38:8 (Sokol Decl. Ex. D).

1   Defendant's Response to No. 6.  Undisputed.  However,
2   Defendant objects on the basis of relevance, as Defendant is not
3   alleging that Plaintiff had a criminal record prior to her
4   arrest.  The fact that a mistaken arrest was made is not in
5   dispute.  Objection OVERRULED.

6        Plaintiff's No. 7.  The officers hit the wall next to the
7   door, demanded entry, and told Mrs. Munoz that she was under
8   arrest.

9        Supporting Evidence: Munoz Dep. at 19:13-20, 21:16-19 (Sokol
10  Decl. Ex. B).

11       Defendant's Response to No. 7.  Disputed to the extent that
12  this fact implies that Defendant's deputy sheriffs arrested
13  Plaintiff immediately upon arrival at Plaintiff's residence, and
14  made no considerations as to whether Plaintiff was indeed the
15  suspect named in the warrant.  (Note: Plaintiff has not disputed
16  Defendant's UMF, so she cannot now offer facts that contradict
17  Defendant's UMF).

18       Supporting Evidence: Defendant's UMF Nos. 11-25.

19       The objection is SUSTAINED, to the portion of the fact
20  beginning with the word "and" and ending with the word "arrest"
21  on the grounds of ambiguity and relevance for lack of specificity
22  as to time.

23       Plaintiff's No. 8.  The officers had an 11 year old arrest
24  warrant for "Maria Herrera," who purportedly violated her
25  probation and had been charged with the unlawful possession of
26  controlled substances.

27       Supporting Evidence: Naber Report at 2 and Attachment A
28  (Sokol Decl. Ex. E); Cunha Dep., Ex. 16 (Sokol Decl. Ex. F).

14

1   Defendant's Response to No. 8.  Undisputed to the extent
2   that the warrant in question was for a person named "Maria
3   Herrera," was issued in October of 1991, and that the warrant
4   indicates that Mrs. Herrera had violated her probation.  However,
5   the same warrant noted an alias named "Maria Munoz."

6   Supporting Evidence: Defendant's UMF Nos. 3-4.

7   The objection is OVERRULED.

8   Plaintiff's No. 9.  The arrest warrant had expired on
9   December 31, 1999, almost three years before the unlawful arrest
10  on September 20, 2002.

11  Supporting Evidence: Cunha Dep., Ex. 16 (Sokol Decl. Ex. F).

12  Defendant's Response to No. 9.  Disputed, based on the fact
13  that Exhibit 16 from Officer Cunha's deposition was cited as the
14  supporting evidence, and not Officer Cunha's actual testimony.
15  There is no testimony from any of Defendant's employees which
16  support Plaintiff's interpretation of the cited document.
17  Plaintiff's supporting evidence lacks foundation and amounts to
18  inadmissible hearsay, as the document is offered to prove the
19  truth of the matter asserted, namely, that the warrant did indeed
20  expire on December 31, 1999.  Moreover, the notation on Exhibit
21  F, "Expire: 123199," upon which Plaintiff makes her claim that
22  the warrant was expired, does not mean that the warrant
23  referenced in this printout expired on that date.  The reason the
24  date "123199" was entered on the screen was because the Records
25  Management System had not been remediated to accept dates into
26  the next century due to the "Y2K" problem.

27  The objection is SUSTAINED.  This fact is disputed.

28  Supporting Evidence: Declaration of Les Van Meter, paragraph

15

1  3 (Defendant's UMF No. 59).

2     Plaintiff's No. 10.  The arrest warrant lists Herrera at 5
3  feet 6 inches and 195 pounds.

4     Supporting Evidence: Cunha Dep. Ex. 16 (Sokol Decl. Ex. F).

5     Defendant's Response to No. 10.  Disputed to the extent that
6  the arrest warrant only contained the cited height and weight
7  information.  The Department of Motor Vehicles printout on "Maria
8  Guadalupe Herrera," attached as part of Exhibit 16, lists Mrs.
9  Herrera at 5 feet 1 inch, and 110 pounds.

10     The fact is disputed.

11     Plaintiff's No. 11.  Mrs. Alvarado de Munoz is only 5 feet
12  tall.

13     Supporting Evidence: Cunha Dep., Ex, 17 at FC 106 (Sokol
14  Decl. Ex. G).

15     Defendant's Response to No. 11: Undisputed that the document
16  cited states that "Maria Munoz" is 5 feet tall.  Defendant
17  objects to the extent that this deposition exhibit lacks
18  information and amounts to inadmissible hearsay.

19     The fact is undisputed based on physical observation; the
20  foundational objections to the document are SUSTAINED in part -
21  accepted not for the truth.

22     Plaintiff's No. 12.  Mrs. Alvarado de Munoz weighs 135
23  pounds.

24     Supporting Evidence: Cunha Dep. Ex. 17 at FC 106 (Sokol
25  Decl. Ex. G).

26     Defendant's Response to No. 12.  Undisputed that the
27  document cited states that "Maria Munoz" weighs 135 pounds.
28  Defendant objects to the extent that this deposition exhibit

16

1   lacks foundation and amounts to inadmissible hearsay.

2      OVERRULED: The warrant package is admissible not for the

3 truth of the matters asserted, but to show what information the

4 arresting officers acted on in executing the arrest.  Plaintiff's

5 actual weight is subject to proof.

6      Plaintiff's No. 13.  The arrest warrant noted that Herrera

7 had a mole on her chin.

8      Supporting Evidence: Cunha Dep., Ex. 16 (Sokol Decl. Ex. F).

9      Defendant's Response to No. 13.  Undisputed that the Master

10 Name File (bates stamped FC 113) for Maria Herrera makes that

11 notation.

12      Plaintiff's No. 14.  Mrs. Alvarado de Munoz does not have a

13 mole on her chin.

14      Supporting Evidence: Sylvia Sokol Decl., paragraph 21.

15      Defendant's Response to No. 14.  Undisputed.

16      Plaintiff's No. 15.  Herrera purportedly used the name

17 "Maria Munoz."

18      Supporting Evidence: Cunha Dep., Ex. 16 (Sokol Decl. Ex. F).

19      Defendant's Response to No. 15.  Undisputed that Maria

20 Herrera was known to have an alias of "Maria Munoz" (see

21 Defendant's UMF Nos. 4, 5, 7).

22      Plaintiff's No. 16.  Each piece of identification that Mrs.

23 Alvarado de Munoz tried to show the officers listed her name as

24 "Maria Alvarado de Munoz."

25      Supporting Evidence: Cunha Dep. At 183-13 (Sokol Decl. Ex.

26 H); Cunha Dep., Ex. 12 and Ex. 13 (Sokol Decl. Exs. I and J):

27 Munoz Dep. at 29:1-8 (Sokol Decl. Ex. B).

28      Defendant's Response to No. 16.  Disputed.  Plaintiff's

California Identification Card is signed "Maria Munoz," and the name, as well as the signature, on Plaintiff's Social Security card is "Maria Alvarado Munoz."

Plaintiff's No. 17.  The arrest warrant lists Herrera's birthday as December 25, 1944.

Supporting Evidence: Cunha Dep., Ex. 16 (Sokol Decl. Ex. F).

Defendant's Response to No. 17.  Undisputed that the warrant abstract lists Maria Herrera's birthday as December 25, 1944.

Plaintiff's No. 18: Mrs. Alvarado de Munoz was born on July 14.

Supporting Evidence: Cunha Dep., Ex. 16 (Sokol Decl. Ex. I).

Defendant's Response to No. 18.  Undisputed that Plaintiff's California Identification Card lists her birthdate as July 14, 1944.

Plaintiff's No. 19.  Mrs. Alvarado de Munoz explained to the officers that her name was Maria Alvarado de Munoz, and not Maria Herrera.

Supporting Evidence: Munoz Dep. at 26:8-25 (Sokol Decl. Ex. B).

Defendant's Response to No. 19.  Disputed.  The cited testimony only states that Plaintiff told the deputy sheriffs that she had "some papers to show them."  Disputed.

Plaintiff's No. 20.  The officers showed Mrs. Alvarado de Munoz a driver's license of a woman they were looking for, named Maria Herrera.

Supporting Evidence: Munoz Dep. at 22:4-7 (Sokol Decl. Ex. B).

Defendant's Response to No. 20.  Undisputed.

1    Plaintiff's No. 21.  Mrs. Alvarado de Munoz explained that
2    she was not the woman in the picture.

3    Supporting Evidence: Munoz Dep. at 22:4-7 (Sokol Decl. Ex.
4    B).

5    Defendant's Response to No. 21.  Undisputed.

6    Plaintiff's No. 22.  Mrs. Alvarado de Munoz showed the
7    officers her valid California Identification Card and her Social
8    Security Number, each of which bore her name.

9    Supporting Evidence: Cunha Dep. at 18:3-13 (Sokol Decl. Ex.
10   H); Cunha Dep., Ex. 12 and 13 (Sokol Decl. Exs. I and J): Munoz
11   Dep. at 29:18 (Sokol Decl. Ex. B).

12   Defendant's Response to No. 22.  Undisputed that Plaintiff
13   showed the officers her California Identification Card and Social
14   Security Card.  Disputed to the extent Plaintiff claims that the
15   cards both exclusively bear the name "Maria Alvarado de Munoz."
16   Plaintiff's California Identification Card is signed "Maria
17   Munoz," and the name, as well as the signature, on Plaintiff's
18   Social Security Card is "Maria Alvarado Munoz."

19   Plaintiff's No. 23.  One of the arresting officers noticed
20   the discrepancies between Plaintiff and the description of the
21   suspect in the warrant package.

22   Supporting Evidence: Garringer Dep., Ex. 18 at 2 (Sokol
23   Decl. Ex. K).

24   Defendant's Response to No. 23.  It is undisputed that
25   physical discrepancies were noticed.  (See Defendant's UMF Nos.
26   15-17, 23).

27   Plaintiff's No. 24.  He called the detective who had
28   compiled the package, and pointed out that Plaintiff had said

that she was not Herrera, and that the warrant was not for her.

Supporting Evidence: Garringer Dep., Ex. 18 at 2 (Sokol Decl. Ex. K).

Defendant's Response to No. 24.  Disputed, based on the fact that Exhibit 18 from Deputy Garringer's deposition was cited as the supporting evidence, and not Deputy Cunha's actual testimony. There is no testimony from any of Defendant's employees which would authenticate the document cited by Plaintiff.  Plaintiff's supporting evidence lacks foundation and amounts to inadmissible hearsay.

Plaintiff's No. 25.  He told the detective that the warrant indicated that the suspect was supposed to be 5 feet, 6 inches tall, and 195 pounds.

Supporting Evidence: Garringer Dep., Ex. 18 at 2 (Sokol Decl. Ex. K).

Defendant's Response to No. 25.  Disputed, based on the fact that Exhibit 18 from Deputy Garringer's deposition was cited as the supporting evidence, and not Deputy Cunha's actual testimony. There is no testimony from any of Defendant's employees which would support the proposition for which the document is cited. Plaintiff's supporting evidence lacks foundation and amounts to inadmissible hearsay.

Plaintiff's No. 26.  The detective told him that he thought they were typos.

Supporting Evidence: Garringer Dep., Ex. 18 at 2 (Sokol Decl. Ex. K).

Defendant's Response to No. 26.  Disputed to the extent that Deputy Garringer's actual deposition testimony is that he

20

believed that the height was a typographical error.   (Garringer
Depo., 21:5-10).   Defendant objects based on the fact that
Exhibit 18 from Deputy Garringer's deposition was cited as the
supporting evidence, and not Deputy Cunha's actual testimony.
There is no testimony from any of Defendant's employees which
would authenticate the document cited by Plaintiff.   Plaintiff's
supporting evidence lacks foundation and amounts to inadmissible
hearsay.   Disputed.

Plaintiff's No. 27.   The officers arrested Mrs. Alvarado de
Munoz.

Supporting Evidence: Garringer Dep., Ex. 18 at 2 (Sokol
Decl. Ex. K).

Defendant's Response to No. 27.   It is undisputed that
Plaintiff was arrested.   (Defendant's UMF no. 25).

Plaintiff's No. 28.   They handcuffed her behind her back,
and removed her from her home.

Supporting Evidence: Cunha Dep. at 21:8-22:3 (Sokol Decl.
Ex. H).

Defendant's Response to No. 28.   Undisputed that Plaintiff
was removed from her home.   Disputed to the extent that Plaintiff
was handcuffed behind her back, as the cited deposition testimony
makes no such representation.   Disputed.

Plaintiff's No. 29.   Mrs. Alvarado de Munoz did not threaten
any of the officers at any point during the arrest.

Supporting Evidence: Cunha Dep. at 10:2-24 (Sokol Decl. Ex.
H).

Defendant's Response to No. 29.   Undisputed.   However,
Defendant objects on the basis of relevance, as Defendant has not

1  alleged as part of any defense or immunity that Plaintiff
2  threatened the deputy sheriffs.  Objection OVERRULED.

3      Plaintiff's No. 30.  As Officer Haslam put it, "[s]he was
4  upset.  She didn't resist."

5      Supporting Evidence: Haslam Dep. at 47:24 (Sokol Decl. Ex.
6  L).

7      Defendant's Response to No. 30.  Undisputed.  However,
8  Defendant objects on the basis of relevance, as Defendant has not
9  alleged as part of any defense or immunity that Plaintiff
10 threatened the deputy sheriffs.  Objection OVERRULED.

11     Plaintiff's No. 31.  Booking officer Andy Schick testified
12 that Mrs. Alvarado de Munoz was "calm.  She walked right by my
13 side, entered my cubicle, and I didn't notice anything that would
14 lead me to anything."

15     Supporting Evidence: Schick Dep. 23:15-18 (Sokol Decl. Ex.
16 M).

17     Defendant's Response to No. 31.  Undisputed.  However,
18 Defendant objects on the basis of relevance, Defendant has not
19 alleged as part of any defense or immunity that Plaintiff
20 threatened the deputy sheriffs.  Immaterial fact for this motion.

21     Plaintiff's No. 32.  James Whitton, the identification
22 technician who fingerprinted Mrs. Alvarado de Munoz, noted that
23 she was "very passive and very quiet."

24     Supporting Evidence: Whitton Dep. at 20:10-11 (Sokol Decl.
25 Ex. D).

26     Defendant's Response to No. 32.  Undisputed.  However,
27 Defendant objects on the basis of relevance.  Defendant has not
28 alleged as part of any defense or immunity that Plaintiff

1 | threatened the deputy sheriffs, or was otherwise disruptive.

2 | Objection OVERRULED.

3 | Plaintiff's No. 33.  James Whitton "didn't feel that she had

4 | been arrested before."

5 | Supporting Evidence: Whitton Dep. at 20:12 (Sokol Decl. Ex.

6 | D).

7 | Defendant's Response to No. 33.  Undisputed.  However,

8 | Defendant objects on the basis of relevance.  Defendant has not

9 | alleged as part of any defense or immunity that Plaintiff

10 | threatened the deputy sheriffs, or was otherwise disruptive.

11 | Objection SUSTAINED for this motion.

12 | Plaintiff's No. 34.  The officers first brought the

13 | handcuffed Mrs. Alvarado de Munoz to the county courthouse.

14 | Supporting Evidence: Cunha Dep. at 21:8-22:3 (Sokol Decl.,

15 | Ex. H).

16 | Defendant's Response to No. 34.  Undisputed that Plaintiff

17 | was initially brought to the county courthouse in Firebaugh.

18 | Plaintiff's No. 35.  She told a bailiff at the courthouse

19 | that she was not Maria Herrera.

20 | Supporting Evidence: Chacon Dep. At 8:23-9:5.

21 | Defendant's Response to No. 35.  Undisputed.

22 | Plaintiff's No. 36.  Mrs. Alvarado de Munoz told the bailiff

23 | that she had a serious medical condition.

24 | Supporting Evidence: Chacon Dep. at 8:23-25 (Sokol Decl. Ex.

25 | N).

26 | Defendant's Response to No. 36.  Undisputed that Plaintiff

27 | told Officer Chacon that she had medical problems.  Disputed to

28 | the extent that Plaintiff told Officer Chacon that the problems

1  were serious.

2      Plaintiff's No. 37.  Because the courthouse has no medical
3  staff, the bailiff told the arresting officers to take Mrs.
4  Alvarado de Munoz to the county jail.

5      Supporting Evidence: Chacon Dep. at 20:18-24 (Sokol Decl.
6  Ex. N).

7      Defendant's Response to No. 37.  It is undisputed that
8  Plaintiff was transported to the county jail facility for medical
9  reasons.  (See Defendant's UMF Nos. 28-30).

10     Plaintiff's No. 38.  Mrs. Alvarado de Munoz was booked at
11 the county jail at approximately 11:30 a.m.

12     Supporting Evidence: Haslam Dep. at 61:7-10 (Sokol Decl. Ex.
13 L).

14     Defendant's Response to No. 38.  Undisputed.

15     Plaintiff's No. 39.  Although a nurse medically screened
16 her, Mrs. Alvarado de Munoz did not receive medication during her
17 detention.

18     Supporting Evidence: Dionisio Dep. (May 6) at 34:21-23,
19 40:1-8 (Sokol Decl. Ex. O).

20     Defendant's Response to No. 39.  Disputed, as this fact
21 misstates Ms. Dionisio's testimony.  Ms. Dionisio testified that
22 she did not give the medication to Plaintiff because it was the
23 procedure in the jail for her to give inmate medications to the
24 charge nurse, who then gives the medications to the inmates.
25 Defendant also objects on the basis of relevance, as Plaintiff's
26 claims based on denial of medical care are not being brought
27 under state law.

28     Supporting Evidence: Dionisio Depo. 34:25-35:3, 40:1-8.

24

1  Objection sustained on the ground of relevance for this motion.

2      Plaintiff's No. 40.   Around 8:12 p.m., Mrs. Alvarado de

3  Munoz was subjected to a strip and visual body cavity search.

4      Supporting Evidence: Murphy Dep. at 19:17-22 (Sokol Decl.

5  Ex. P); Naber Report at 4 (Sokol Decl. Ex. E).

6      Defendant's Response to No. 40.   Undisputed.   (See

7  Defendant's UMF Nos. 52-53).

8      Plaintiff's No. 41.   Pursuant to the jail's overcrowding

9  policy, an officer determines which inmates are to be released by

10 looking at, among other things, the person's past criminal

11 history, the nature of the charges against her, her behavior, and

12 her prior history with the county jail and with the community.

13     Supporting Evidence: Akioyame Dep. at 9:12-13, 9:21-10:3,

14 14:1-4 (Sokol Decl. Ex. Q).

15     Defendant's Response to No. 41.   Undisputed.

16     Plaintiff's No. 42.   Applying these factors, the county jail

17 released Mrs. Alvarado de Munoz around 11:30 p.m.

18     Supporting Evidence: Akioyame Dep. at 14:5-17 (Sokol Decl.

19 Ex. Q); Akioyame Dep., Ex. 50 (Sokol Decl. Ex. S).

20     Defendant's Response to No. 42.   Undisputed (see Defendant's

21 UMF No. 57).

22     Plaintiff's No. 43.   Before the arrest, the County's officer

23 who compiled the warrant package did not search Herrera's address

24 or Social Security number.   He searched for the address and

25 Social Security number of "Maria Munoz."

26     Supporting Evidence: Garringer Dep., Ex. 18 at 2 (Sokol

27 Decl. Ex. K); Garringer Dep. At 11:21-24 (Sokol Decl. Ex. S).

28     Defendant's Response to No. 43.   Undisputed that Deputy

1   Garringer searched for the address and social security number of

2   "Maria Munoz."   Disputed to the extent it suggests that Maria

3   Herrera's address and social security number were not searched.

4   Deputy Garringer conducted a search for Maria Herrera's

5   information, and discovered that she had an alias of "Maria

6   Munoz."   (See Defendant's UMF Nos. 5-7).   In addition, Defendant

7   objects to the extent that Exhibit 18 of Deputy Garringer's

8   deposition lacks foundation, and constitutes inadmissible

9   hearsay.   Disputed.

10       Plaintiff's No. 44.   At the time of the arrest, the County's

11   officers failed to review Mrs. Alvarado de Munoz's United States

12   Passport or her INS Registration Card, each bearing her full name

13   and birth date.

14       Supporting Evidence: Cunha Dep. At 27:7-9, 29:6-13, 29:19-

15   30:2 (Sokol Decl. Ex. H).

16       Defendant's Response to No. 44.   Disputed, as this misstates

17   Deputy Cunha's testimony.   Deputy Cunha testified that he did not

18   recall reviewing Plaintiff's Passport or INS Registration Card.

19   This fact is also disputed to the extent that it is implied that

20   Plaintiff offered Deputy Cunha her Passport or INS Registration

21   Card for review.   Disputed.

22       Plaintiff's No. 45.   The arresting officers did not conduct

23   a check for information about Herrera's scars, tattoos, and

24   moles.

25       Supporting Evidence: Cunha Dep. at 13:15-21, 16:16-20, 19:1-

26   4, 23:23-24:1 (Sokol Decl. Ex. H).

27       Defendant's Response to No. 45.   Disputed to the extent that

28   this fact misstates Deputy Cunha's testimony.   Deputy Cunha

testified that he did not recall whether the arresting officers
said anything or made any investigations as to any identifying
marks on Plaintiff.  Disputed.

Plaintiff's No. 46.  At the time of the arrest, no one
checked Plaintiff's fingerprints against those of Herrera.

Supporting Evidence: Cunha Dep. At 32:23-5, 33:18-22, 34:5-
11 (Sokol Decl. Ex. H).

Defendant's Response to No. 46.  Undisputed that a
fingerprint check was not performed at the time of the arrest.
Disputed to the extent that a fingerprint check could have been
performed at the time of arrest, as Deputy Cunha testified that
Maria Herrera's fingerprints were not in the warrant package
materials, and there is nothing to indicate that any of the
arresting officers were trained in performing fingerprint
comparisons, or had the equipment with them to do such a
comparison.  Disputed.

Plaintiff's No. 47.  At the time of the arrest, the
arresting officers failed to obtain booking records that revealed
that Herrera had a scar on her right calf.  If Mrs. Alvarado de
Munoz did not have such a scar, one of the County's officers
admits that it would have been a pretty good indication that she
was not the woman they were looking for.

Supporting Evidence: Garringer Dep. At 19:21-20:3 (Sokol
Decl. Ex. S).

Defendant's Response to No. 47.  Disputed to the extent that
this "fact" implies that the arresting officers "failed" to
obtain booking records.  Deputy Garringer testified that the
information regarding Maria Herrera's scar was not in the warrant

1  materials.  Defendant also objects on the basis that the question

2  posed to Deputy Garringer was vague.  Disputed.

3        Supporting Evidence: Garringer Depo. 19:15-20.

4        SUSTAINED.  Disputed fact.

5        Plaintiff's No. 48.  The warrant abstract that the officers

6  used to arrest Mrs. Alvarado de Munoz showed that the warrant had

7  been issued on October 17, 1991.

8        Supporting Evidence: Cunha Dep., Ex. 16 (Sokol Decl. Ex. F).

9        Defendant's Response to No. 48.  It is undisputed that the

10  warrant was issued on October 17, 1991.  (See Defendant's UMF No.

11  3).

12        Plaintiff's No. 49.  The following language appears on the

13  warrant the officers had when they arrested Plaintiff: "EXPIRE:

14  123199."

15        Supporting Evidence: Cunha Dep., Ex. 16 (Sokol Decl. Ex. F).

16        Defendant's Response to No. 49.  Disputed to the extent that

17  the warrant actually expired on December 31, 1999.  Defendant

18  objects based on the fact that Exhibit 16 from Officer Cunha's

19  deposition was cited as the supporting evidence, and not any

20  testimony regarding the document.  There is no testimony from any

21  of Defendant's employees which would authenticate the document

22  cited by Plaintiff as part of the warrant package in the field.

23  Plaintiff's supporting evidence lacks foundation and is

24  inadmissible hearsay.  This fact is also disputed to the extent

25  that the quoted portion appears "on the warrant," as the cited

26  document is a computer-generated printout.  Moreover, the

27  notation on Exhibit F, "Expire: 123199," upon which Plaintiff

28  makes her claim that the warrant was expired, does not mean that

1 the warrant referenced in this printout expired on that date.

2 The reason the date "123199" was entered on the screen was

3 because the Records Management System had not been remediated to

4 accept dates into the next century due to the "Y2K" problem.

5      Supporting Evidence: Declaration of Les Van Meter, paragraph

6 3 (Defendant's UMF No. 59).

7      Objection SUSTAINED.  This fact is disputed.

8      Plaintiff's No. 50.  Lieutenant Toby Rien, who investigated

9 the arrest of Mrs. Alvarado de Munoz, testified that after

10 looking at the photographs of the two women "what I viewed, they

11 were not the same person."

12      Supporting Evidence: Rien Dep. At 34:21-23 (Sokol Decl. Ex.

13 T).

14      Defendant's Response to No. 50.  Undisputed that the cited

15 testimony was given.  However, Defendant objects on the basis of

16 relevance, as Lieutenant Rien's observation was made after the

17 fact, pursuant to an investigation, and not under the same

18 conditions as the arresting officers.  Objection SUSTAINED on the

19 ground of relevance.

20      Plaintiff's No. 51.  James Whitton, the identification

21 technician who fingerprinted Mrs. Alvarado de Munoz, testified

22 that he "noticed a physical difference in what was on the warrant

23 and what was in my office..."

24      Supporting Evidence: Whitton Dep. At 19:2-5 (Sokol Decl. Ex.

25 D).

26      Defendant's Response to No. 51.  Disputed to the extent that

27 the cited testimony is incomplete.  Mr. Whitton testified that he

28 pointed out "the discrepancy in height" based on "the physical in

1   the warrant indicated a taller person."  Also disputed to the

2   extent that this fact implies that the warrant information only

3   contained height information indicating that Herrera was

4   considerably taller than Plaintiff.  The Department of Motor

5   Vehicles printout on "Maria Guadalupe Herrera," attached as part

6   of the warrant materials, lists Mrs. Herrera at 5 feet 1 inch.

7        Supporting Evidence: Whitton Depo., 19:6-9; Cunha Depo., Ex.

8   16 (Sokol Decl. Ex. F).  Disputed.

9        Plaintiff's No. 52.  Plaintiff's expert William F. Naber

10  testified that he concluded that "[t]hey're two different people"

11  by looking at the photographs of the two women based on "the

12  shape of the eyes, the shape of the cheek bones, the lips, the

13  nose."

14       Supporting Evidence: Naber Dep. At 68:22-69:1 (Sokol Decl.

15  Ex. U).

16       Defendant's Response to No. 52.  Undisputed that the cited

17  testimony was given.  However, Defendant objects on the basis of

18  relevance, as Mr. Naber's observation was made after the fact,

19  pursuant to an investigation, and not under the same conditions

20  that confronted the arresting officers.  Therefore, this evidence

21  is unreliable, and would not tend to prove that the actions of

22  the deputy sheriffs were unreasonable.  Objection SUSTAINED for

23  this motion.

24       The parties are directed to confer with the court to arrive

25  at a final set of undisputed material facts.

26                 III.  <u>LEGAL STANDARD</u>

27  A.   <u>Summary Judgment</u>

28       Summary judgment is appropriate only "if the pleadings,

                                30

1   depositions, answers to interrogatories, and admissions on file,

2   together with the affidavits, if any, show that there is no

3   genuine issue as to any material fact." Fed. R. Civ. P. 56(c);

4   *see also Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892,

5   899 (9th Cir. 1993). A genuine issue of fact exists when the

6   non-moving party produces evidence on which a reasonable trier of

7   fact could find in its favor viewing the record as a whole in

8   light of the evidentiary burden the law places on that party.

9   *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th

10  Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11  242, 252-56 (1986). The non-moving party cannot simply rest on

12  its allegation without any significant probative evidence tending

13  to support the complaint. *See U.A. Local 343 v. Nor-Cal*

14  *Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1995).

15      [T]he plain language of Rule 56(c) mandates the entry
        of summary judgment, after adequate time for discovery
16      and upon motion, against a party who fails to make a
        showing sufficient to establish the existence of an
17      element essential to the party's case, and on which
        that party will bear the burden of proof at trial. In
18      such a situation, there can be "no genuine issue as to
        any material fact," since a complete failure of proof
19      concerning an essential element of the non-moving
        party's case necessarily renders all other facts
20      immaterial.

21  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

22      The more implausible the claim or defense asserted by the

23  opposing party, the more persuasive its evidence must be to avoid

24  summary judgment. *See United States ex rel. Anderson v. Northern*

25  *Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996). Nevertheless,

26  "[t]he evidence of the non-movant is to be believed, and all

27  justifiable inferences are to be drawn in its favor." *Liberty*

28  *Lobby*, 477 U.S. at 255. A court's role on summary judgment,

however, is not to weigh the evidence, *i.e.*, issue resolution,
but rather to find genuine factual issues.  *See Abdul-Jabbar v.
General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

Evidence submitted in support of or in opposition to a
motion for summary judgment must be admissible under the standard
articulated in 56(e).  *See Keenan v. Hall*, 83 F.3d 1083, 1090 n.1
(9th Cir. 1996); *Anheuser-Busch, Inc. v. Nat'l Beverage
Distribs.*, 69 F.3d 337, 345 n.4 (9th Cir. 1995).  Properly
authenticated documents, including discovery documents, although
such documents are not admissible in that form at trial, can be
used in a motion for summary judgment if appropriately
authenticated by affidavit or declaration.  *See United States v.
One Parcel of Real Property*, 904 F.2d 487, 491-492 (9th Cir.
1990).  Supporting and opposing affidavits must be made on
personal knowledge, shall set forth such facts as would be
admissible in evidence, and shall show affirmatively that the
affiant is competent to testify to the matters stated herein.
*See* Fed. R. Civ. P. 56(e); *Connor v. Sakai,* 15 F.3d 1463, 1470
(9th Cir. 1993), *rev'd on other grounds sub nom. Sandin v.
Connor*, 515 U.S. 472 (1995).

B.   <u>Local Rule 56-260(b)</u>

Any party opposing a motion for summary judgment or summary
adjudication shall reproduce the itemized facts in the Statement
of Undisputed Facts and admit those facts which are undisputed
and deny those which are disputed, including with each denial a
citation to the particular portions of any pleading, affidavit,
deposition, interrogatory answer, admission, or other document

32

1  relied upon in support of that denial.  The opposing party may

2  also file a concise "Statement of Disputed Facts," and the source

3  thereof in the record, of all additional material facts as to

4  which there is a genuine issue precluding summary judgment or

5  adjudication.  The opposing party shall be responsible for the

6  filing with the Court of all evidentiary documents cited in the

7  opposing papers.  If a need for discovery is asserted as a basis

8  for denial of the motion, the party opposing the motion shall

9  provide a specification of the particular facts on which

10  discovery is to be had or the issues on which discovery is

11  necessary.

12

13                    IV.  ANALYSIS

14  A.    Introduction

15        Defendant County of Fresno asserts that all of Plaintiff's

16  state law claims are barred by the immunity provisions of

17  California Civil Code § 43.55, California Penal Code § 847, and

18  California Government Code § 844.6.  Memorandum, docket no. 45,

19  at 8:4-7.  These statutes provide, in pertinent part:

20        There shall be no liability on the part of, and no
          cause of action shall arise against, any peace officer
21        who makes an arrest pursuant to a warrant of arrest
          regular upon its face if the peace officer in making
22        the arrest acts without malice and in the reasonable
          belief that the person arrested is the one referred to
23        in the warrant.

24  Cal. Civil Code § 43.55 (West 2003);

25                         ***
          (b) There shall be no civil liability on the part of,
26        and no cause of action shall arise against, any peace
          officer or federal criminal investigator or law
27        enforcement officer described in subdivision (a) or (d)
          of § 830.8, acting within the scope of his or her
28        authority, for false arrest or false imprisonment

                              33

arising out of any arrest under any of the following
circumstances: (a)[3] The arrest was lawful, or the peace
officer, at the time of the arrest, had reasonable
cause to believe the arrest was lawful; (b) The arrest
was made pursuant to a charge made, upon reasonable
cause, of the commission of a felony by the person to
be arrested; (c) The arrest was made pursuant to the
requirements of §§ 142, 837, 838, or 839.

Cal. Penal Code § 847 (West 2003); and

Except as otherwise provided by statute, a public
entity is not liable for an injury resulting from an
act or omission of an employee of the public entity
where the employee is immune from liability.

Cal. Gov't Code § 815.2(b).  Plaintiff denies that these statutes
bar her state claims.  Opposition, docket no. 58, *passim*.


B.   **Claim of Assault and Battery**

Plaintiff has agreed to stipulate to a dismissal of her
claim for assault and battery.  Opposition, docket no. 58, at
1:13-14; Defendant County of Fresno's Reply, docket no. ZZ, at
2:3-4.  Plaintiff's Second "Cause of Action," for assault and
battery, is DISMISSED WITH PREJUDICE.


C.   **Claim of False Arrest and Imprisonment**

False imprisonment under California law is the "unlawful
violation of the personal liberty of another."  *Asgari v. City of
Los Angeles*, 15 Cal.4th 744, 757, 63 Cal.Rptr.2d 842, 850, 937
P.2d 273, 281 (1997) (citations omitted).  Under California law,
"'false arrest' and 'false imprisonment' are not separate torts.
False arrest is but one way of committing a false imprisonment,

---

[3]   So in enrolled bill.

34

and they are distinguishable only in terminology." *Collins v.*
*City and County of San Francisco*, 50 Cal.App.3d 671, 673, 123
Cal.Rptr. 525, 526 (1975).

In this case, the arrest was effected pursuant to a "no-
bail" felony warrant.  Arrests pursuant to a valid warrant are
authorized under Cal. Penal Code § 836.  "An arrest is valid if
supported by probable cause.  Probable cause to arrest exists if
facts known to the arresting officer would lead a person of
ordinary care and prudence to entertain an honest and strong
suspicion that an individual is guilty of a crime." *People v.*
*Kraft*, 23 Cal.4th 978, 1037, 99 Cal.Rptr.2d 1, 40, 5 P.3d 68, 104
(2000) (*citing People v. Price*, 1 Cal.4th 324, 410, 3 Cal.Rptr.2d
106 (1991)).

Defendants cite *Lopez v. City of Oxnard*, 207 Cal.App.3d 1,
254 Cal.Rptr. 556 (1989), as having facts so similar to the
present case that its holding should guide the Court's decision.
In *Lopez*, the plaintiff

> was arrested three times on an outstanding warrant
> issued by the municipal court.  The person named in the
> warrant had the same name, birth date, address and
> physical description as plaintiff Lopez.  There was,
> however, a problem.  Lopez was not the person named in
> the warrant.  The court offered a solution.  After his
> first arrest, the court prepared a document called a
> "disposition sheet" for Lopez to carry with him.  It
> stated that Lopez was not the person named in the
> warrant.  When arrested again, he showed the
> disposition sheet to the arresting officers and the
> sheriff.  They refused to verify its validity.
> ***
>      [The plaintiff argued], among other things, that .
> . . the arresting officers and the jail personnel
> should have verified the validity of the court order he
> held.

207 Cal.App.3d at 4-5, 254 Cal.Rptr. at 557.  The court
determined that "neither the police officers nor the jailers

35

breached any duty in refusing to consider the disposition sheet
he showed to them." *Id.* at 5, 254 Cal.Rptr. at 557.  "[A]
sheriff, as a ministerial officer of the court, may safely
proceed to incarcerate an individual on a warrant apparently
valid on its face which comes from a court with subject matter
jurisdiction." *Id.* at 11, 254 Cal.Rptr. 561-62.  The court
explained further: "A police officer must use reasonable prudence
and diligence to determine whether a party being arrested is the
one described in the warrant.  The officer may not refuse to act
upon information offered him which discloses the warrant is being
served on the wrong person." *Id.* at 7, 254 Cal.Rptr. at 559.
However, "the sheriff simply refused to look behind a valid
warrant to investigate the validity of statements on a piece of
paper handed to him by an arrestee." *Id.* at 11, 254 Cal.Rptr. At
561.  The *Lopez* court was partially "sympathetic to the plight of
Mr. Lopez.  To reduce the risk of this occurring again, we
suggest that such disposition notices include as much identifying
information as possible, including fingerprints and photographs."
*Id.* at 13, 254 Cal.Rptr. at 563.

Plaintiff argues that *Lopez* is inapposite.  There, the
plaintiff "ma[de] no allegations that the warrant was either
irregular on its face or that it did not adequately describe
him." *Id.* at 8, 254 Cal.Rptr. at 560.  Here, however, Plaintiff
argues that the warrant was irregular on its face because it had
expired (*see* Plaintiff's UMF 9).  In *Lopez*, "[t]he trial court
took judicial notice of the warrant and found it regular on its
face." *Id.*, 254 Cal.Rptr. at 560 (citing Code Civ. Proc.
§ 430.30(a); *Blatty v. New York Times, Co.*, 42 Cal.3d 1033, 1040,

36

232 Cal.Rptr. 542, 728 P.2d 1177 (1986)).  Defendant rejoins that the warrant had not actually expired and was not irregular on its face.  (*See* Defendant's UMF 59; Defendant's response to Plaintiff's UMF 9).  Plaintiff's reply challenges Defendant's supporting evidence on grounds of inadequate foundation (*see* Plaintiff's Objections to Decl. of Les van Meter, docket no. DD, at 2:3-16).  Here, there remains in dispute as to which "warrant" the arresting officers possessed in the field and whether it was "regular on its face."

As in *Robinson v. City and County of San Francisco*, 41 Cal.App.3d 334, 336, 116 Cal.Rptr. 125, 126-27 (1974), here, there is a factual dispute whether Plaintiff was the person named in the warrant.  Plaintiff argues that the warrant did not adequately describe her (*see* Plaintiff's UMFs 10-25; Sokol Sup. Decl., Ex. A, at 46:9-18).  Defendant admits that there were discrepancies between the description of Herrera in the warrant package documents and Plaintiff's physical appearance.  (*See* Defendant's responses to Plaintiff's UMFs 10-25).  For immunity, the arresting officer must reasonably believe the person arrested is the one described in the warrant.  Cal. Civ. Code § 43.55.

The Court cannot take judicial notice of the warrant, because the parties have submitted two documents related to the warrant, neither of which is a certified copy of the warrant itself.  There is a "Warrant Retrieval," which includes the entry "EXPIRE: 123199."  *See* Sokol Decl., docket no. 59, Exhibit E ("Naber Expert Witness Report"), at 20.  There is also a "Warrant Abstract," which includes a date of issue (10/17/91), but no date of expiration.  *See* Sokol Decl., docket no. 59, Exhibit F ("the

1  warrant package"), at FC 129.   When the undisputed material facts

2  submitted by Defendant County of Fresno are reviewed, the

3  question raised by face of the Warrant Retrieval document's

4  facial invalidity was not considered until after Plaintiff's

5  arrest and release.   *See* Defendant's UMFs 1-9.   The van Meter

6  declaration does not disclose whether the "Y2K problem" with

7  warrants had been communicated to all field offices.   Whether the

8  officers executing the warrant had such knowledge is unstated.

9      The arresting officers had in their possession only the

10  warrant package, which included the Warrant Abstract but not the

11  Warrant Retrieval document.   Both documents, however, were

12  available to Deputy Garringer.   As neither document is a

13  certified copy of the arrest warrant actually executed in the

14  field, even assuming the fact that an "expiration date" on one of

15  them put Deputy Garringer on notice that an inquiry about the

16  viability of the warrant needed to be made, whether the warrant

17  was regular upon its face cannot be resolved.

18      Under California law, it is well settled that

19      even though an arrest has been made on a
        constitutionally invalid warrant, the arrest and
20      incident search may nevertheless be justified if the
        arrest is not based exclusively upon the warrant but if
21      other facts were present at the time of the arrest
        which furnished probable cause to arrest without a
22      warrant.

23  *People v. Rice*, 10 Cal.App.3d 730, 89 Cal.Rptr. 200 (1970)

24  (citing *People v. Chimel*, 68 Cal.2d 436, 440-441, 67 Cal.Rptr.

25  421, 439 P.2d 333 (1968), overruled on other grounds in *Chimel v.*

26  *California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969);

27  *People v. Donovan*, 272 Cal.App.2d 413, 419, 77 Cal.Rptr. 285

28  (1969); see also *People v. Sanford*, 265 Cal.App.2d 960, 966, 71

1    Cal.Rptr. 790 (1968)); B0022.  The physical descriptions of

2    Herrera were themselves part of the warrant package and could not

3    provide *independent grounds* for establishing probable cause.  No

4    other circumstances are relied upon by Defendants to suggest that

5    there were other facts that could independently provide probable

6    cause for Plaintiff's arrest.

7          "The law is clear that the question of probable cause to

8    arrest is a legal issue to be decided by the trial court."  *Pool*

9    *v. City of Oakland*, 42 Cal.3d 1051, 1071; 232 Cal.Rptr. 528, 538;

10   728 P.2d 1163, 1173 (1986); (citing *Roberts v. City of Los*

11   *Angeles*, 109 Cal.App.3d 625, 629-630, 167 Cal.Rptr. 320 (1980);

12   *Gibson v. J.C. Penney C., Inc.*, 165 Cal.App.2d 640, 645, 331 P.2d

13   1057 (1958); *Aitken v. White*, 93 Cal.App.2d 134, 141, 208 P.2d

14   788, (1949)).

15          The trier of fact's function in false arrest cases is
            to resolve conflicts in the evidence.  Accordingly,
16          where the evidence is conflicting with respect to
            probable cause, it [is] the duty of the court to
17          instruct the jury as to what facts, if established,
            would constitute probable cause.  The jury then decides
18          whether the evidence supports the necessary factual
            findings.
19

20   *Id.* (internal citations omitted).  Here, none of the other facts

21   and circumstances which the arresting officers learned at

22   Plaintiff's home would provide "a person of ordinary care and

23   prudence to entertain an honest and strong suspicion that

24   [Plaintiff was] guilty of a crime," except if they reasonably

25   believed Plaintiff was the person described in the warrant.

26          As the regularity of the warrant of arrest upon its face

27   cannot be decided as a matter of law under Cal. Civ. Code

28   § 43.55, and no other cause existed for arrest under Pen. Code

1 § 847.   Defendant's motion for summary judgment under Cal. Gov't
2 Code § 815.2(b) as to Plaintiff's claim of false imprisonment is
3 DENIED.

5 D.   Violation of the California Constitution, Article I,
6      Sections 7(a) and 13

7      Article I, Section 7(a) of the California Constitution
8 provides, in pertinent part: "A person may not be deprived of
9 life, liberty, or property without due process of law or denied
10 equal protection of the laws."  Article I, Section 13 provides:
11 "The right of the people to be secure in their persons, houses,
12 papers, and effects against unreasonable seizures and searches
13 may not be violated; and a warrant may not issue except on
14 probable cause, supported by oath or affirmation, particularly
15 describing the place to be searched and the persons and things to
16 be seized.

17      The arguments and evidence Defendant adduces in support of
18 summary judgment on this claim are the same as those it adduces
19 in support of summary judgment for the false imprisonment claim.
20 However, the controlling state law appears to bar a claim for
21 damages for an alleged constitutional tort under Cal. Const. Art.
22 §§ 7(a) and 13.  *City of Simi Valley v. Superior Court*, (2003)
23 111 Cal.App.4th 1077, 1084; citing *City of Katzenberg v. Regents*
24 *of the University of California*, (2002) 29 Cal.4th 300, 303; *see*
25 *also People v. Englebrecht* (2001) 88 Cal.App.4th 1236, 1250 (no
26 right to jury trial for claims under Cal. Const. Art. §§ 7 and
27 13).   The motion for summary judgment is GRANTED as to the State
28 constitutional claims.

1   E.   Negligent Infliction of Emotional Distress

2        In California, "there is no independent tort of negligent

3   infliction of emotional distress.   The tort is negligence, a

4   cause of action in which a duty to the plaintiff is an essential

5   element."   *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th

6   965, 984, 25 Cal.Rptr.2d 550, 563, 863 P.2d 795, 807 (1993);

7   *Klein v. Children's Hosp. Med. Center*, 46 Cal.App.4th 889, 894,

8   54 Cal.Rptr. 2d 34 (1996).   The *Potter* court explained further:

9        unless the defendant has assumed a duty to plaintiff in
         which the emotional condition of the plaintiff is an
10       object, recovery is available only if the emotional
         distress arises out of the defendant's breach of some
11       other legal duty and the emotional distress is
         proximately caused by that breach of duty.
12

13   Plaintiff's claim for negligent infliction of emotional distress

14   is considered under her claim for negligence.   Emotional distress

15   damages are also recoverable under a federal civil rights claim.

16   42 U.S.C. § 1983.

17        Plaintiff has not alleged the tort of *intentional* infliction

18   of emotional distress.

19       The elements of the tort of intentional infliction of
         emotional distress are:   (1) extreme and outrageous
20       conduct by the defendant with the intention of causing,
         or reckless disregard of the probability of causing,
21       emotional distress; (2) the plaintiff's suffering
         severe or extreme emotional distress; and (3) actual
22       and proximate causation of the emotional distress by
         the defendant's outrageous conduct . . .   Conduct to be
23       outrageous must be so extreme as to exceed all bounds
         of that usually tolerated in a civilized community.
24       The defendant must have engaged in 'conduct intended to
         inflict injury or engaged in with the realization that
25       injury will result.

26   *Id.* at 1001, 25 Cal.Rptr.2d at 574, 863 P.2d at 819 (citations

27   and internal quotations omitted).   In California, "the law limits

28   claims of intentional infliction distress to egregious conduct

1  *toward plaintiff* proximately caused by defendant."  *Id.*, 25

2  Cal.Rptr.2d at 574, 863 P.2d at 819 (internal quotations omitted;

3  emphasis in original).  "The requirement that the defendant's

4  conduct be directed primarily at the plaintiff is a factor which

5  distinguishes intentional infliction of emotional distress from

6  the negligent infliction of such injury."  *Id.* at 1002, 25

7  Cal.Rptr.2d at 575, 863 P.2d at 820.

8      The motion for summary judgment as to the state claim for

9  stand-alone negligent infliction of emotional distress is

10  GRANTED.

11

12  F.   Claim of Negligence

13      The elements of actionable negligence include: (a) a legal

14  duty to use due care;  (b) breach of that legal duty; and (c) that

15  the breach is the proximate or legal cause of the resulting

16  injury.  *Stuart v. U.S. Government*, 797 F.Supp. 800, 804 (C.D.

17  Cal. 1992).

18      In its Memorandum in Support of the Motion, Defendant

19  asserts that "[t]here is no evidence to support a finding of

20  negligence on the part of the deputies involved in the arrest and

21  detention of the plaintiff."  Docket no. 45, Memorandum, at

22  13:14-15.  As to the arrest itself, the circumstances of the

23  preliminary investigation fall between two situations described

24  in *Milliken v. City of South Pasadena*, 96 Cal.App.3d 834, 842,

25  158 Cal.Rptr. 409, 413 (1979), a false arrest, false

26  imprisonment, and malicious prosecution case.  *Milliken* observes,

27  "the peace officer must *obey* the order of the court," the order

28  in question being a warrant; "But if he had actual knowledge that

42

1   the arrest warrant *did not constitute the order of the court . .*

2   *.,* then he could not rely upon the warrant." *Id.* (emphasis

3   added).  On the other hand, if the warrant was valid on its face,

4   the officer's "innocent or negligent failure to investigate or

5   determine [its validity] would offer no basis for liability."

6   *Id..*  Here, whether the warrant was invalid on its face is in

7   dispute.  The "reasonableness of the officer's investigation into

8   the identity of Maria Herrera" is in dispute.  (*See* Reply, docket

9   no. DD, at 9:25-27).

10       Under such circumstances, Cal. Civ. Code § 43.55 and Cal.

11  Penal Code § 847 do not provide immunity to Defendant as a matter

12  of law for alleged negligence.

13       Defendant also claims immunity under Cal. Gov't Code

14  § 820.2, whereunder public employees are immune from liability

15  for acts or omissions resulting from the 'exercise of discretion

16  . . . whether or not such discretion be abused.  *Goehring v.*

17  *Wright*, 858 F.Supp. 989, 1002 (N.D. Cal. 1994).  The statute

18  relies on imposes a duty on the arresting officer to determine

19  upon reasonable belief that the person arrested is the one

20  referred to in the warrant.

21       Defendant's motion for Cal. Govt. C. § 820.2 immunity is

22  DENIED.

23

24                    V.   <u>CONCLUSION</u>

25       Defendant County of Fresno's motion for partial summary

26  judgment is DENIED.  Plaintiff's claims for assault and battery,

27  ///

28  ///

                              43

1  and violation of Const. Art. I, §§ 7(a) and 13 are DISMISSED WITH

2  PREJUDICE.

3

4  DATED:  October 24, 2003.

5

6                                              Oliver W. Wanger

7                            UNITED STATES DISTRICT JUDGE

8  munoz decision re sj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
for the
Eastern District of California
October 27, 2003

* * CERTIFICATE OF SERVICE * *

1:02-cv-06286

De Munoz

   v.

County of Fresno

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  October 27, 2003, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

    Arturo J Gonzalez               OWW     SMS
    Morrison and Foerster LLP
    425 Market Street
    San Francisco, CA  94105-2482

    James J Arendt
    The Law Firm of Weakley Ratliff Arendt and McGuire LLP
    1630 East Shaw Avenue
    Suite 176
    Fresno, CA  93710

                            Jack L. Wagner, Clerk

                  BY:
                          Deputy Clerk